SKENANDOA RAYON CORPORATION, Plaintiff, *v.* HALIFAX FIRE INSURANCE COMPANY OF HALIFAX, NOVA SCOTIA, Defendant.

Fourth Department, June 26, 1935.

*Frank L. Ward* [*Harry E. Wareham* with him on the brief], for the plaintiff.

*William Otis Badger,* for the defendant.

LEWIS, J. A submitted controversy under section 546 of the Civil Practice Act presents the question whether section 109 of the Insurance Law applies to a policy, issued by a fire insurance corporation, which insures against loss resulting from fire or other stated causes for which the assured is liable either as a common or private carrier.

It appears from the agreed facts that on April 21, 1933, the plaintiff corporation engaged Beatrice Herman, doing business under the name and style of " Mohawk Motor Freight "— to whom we shall refer as the assured — to transport by motor truck from Utica,

N. Y., forty-one cases of rayon yarn for delivery at New Bedford, Mass., and Suncook, N. H. While the shipment was in transit the assured's truck overturned causing damage by fire to the plaintiff's goods. Thereafter the plaintiff recovered a default judgment against the assured in the sum of $2,593.15, which included damage to the shipment in the amount of $2,382.36, and in addition the costs and disbursements of the action.

Immediately following plaintiff's fire loss the assured became insolvent and later, upon her voluntary petition, was adjudicated a bankrupt. Thereafter an execution upon the default judgment against the assured was returned unsatisfied and remains wholly unpaid.

The defendant company is licensed to do business in the State of New York as a fire insurance corporation. Among the risks enumerated in subdivision 7 of section 110 of the Insurance Law which the defendant was licensed to insure was " loss or damage to *property* resulting from the maintenance and use of automobiles." Thus authorized the defendant had issued its policy to the assured and had designated therein for coverage the particular truck and trailer by which plaintiff's shipment was transported. By its contract with the assured the defendant insured " against loss resulting from the liability of the assured to others for loss or damage to lawful goods and merchandise caused by * * * (a) fire, including self-ignition or internal explosion of the conveyance, or lightning. * * * (f) Overturning of the motor truck."

Concededly the shipment was of " lawful goods " and, although we are not informed of the precise cause of the fire, it is agreed that the truck overturned with resulting damage by fire to the shipment and that in a suit by plaintiff against the assured which followed, a judgment was awarded to the plaintiff. It is also agreed that the assured and her agents had fully complied with the conditions of the insurance contract both before and after the damage except that no payment had been made by reason of the loss suffered by the plaintiff.

In resisting the plaintiff's demand for payment of a sum equal to the judgment which plaintiff has recovered against the assured, the defendant contends that the provisions of section 109 of the Insurance Law do not apply to the policy here involved.

We have already pointed out that the defendant was authorized by section 110 of the Insurance Law to issue policies against loss or damage to *property* resulting from the maintenance and use of automobiles. The defendant chose to enter this particular field of risks and to issue such a policy to the assured. Being authorized to write that type of insurance and having accepted the risk by

delivering a policy, the conditions of which were performed by the assured, the obligations imposed by section 109 became, by operation of law, a part of the contract. The statute provides in part:

" § 109. Standard provisions for liability policies. No policy of insurance * * * against loss or damage to property caused by * * * any vehicle * * * propelled or operated by any motive power, and for which loss or damage the person insured is liable, shall be issued or delivered in this state by any corporation or other insurer authorized to do business in this state, unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier from the payment of damages for injury sustained or loss occasioned during the life of such policy, and stating that in case execution against the insured is returned unsatisfied in an action * * * in case death results from the accident, because of such insolvency or bankruptcy, then an action may be maintained by the injured person, or his or her personal representative, against such corporation under the terms of the policy for the amount of the judgment in the said action not exceeding the amount of the policy. * * *

" A policy issued in violation of this section shall, nevertheless, be held valid but be deemed to include the provisions required by this section, and when any provision in such policy or rider is in conflict with the provisions required to be contained by this section, the rights, duties and obligations of the insurer, the policyholder and the injured person shall be governed by the provisions of this section."

This is a mandatory law of which it has been said: " The statute was prompted by a definite mischief. [Cf. *Lunt* v. *Ætna Ins. Co.*, 253 Mass. 610; *Roth* v. *Nat. Automobile Mut. Cas. Co.*, 202 App. Div. 667, 669.] Before its enactment, the insolvency of the assured was equivalent in effect to a release of the surety. The policy was one of indemnity against loss suffered by the principal, and loss to him there was none if he was unable to pay. The effect of the statute is to give to the injured claimant a cause of action against an insurer for the same relief that would be due to a solvent principal seeking indemnity and reimbursement after the judgment had been satisfied." (*Coleman* v. *New Amsterdam Casualty Co.*, 247 N. Y. 271, 275.)

We cannot agree with defendant's argument which, in effect, would free the defendant from the legal obligations imposed by section 109. It is claimed that if we construe the provisions of that section to apply to the policy here involved, the defendant will be placed in the anomalous position of being prohibited by section

110 from writing insurance against bodily injuries and being required to issue such policies by section 109. The argument rests upon defendant's interpretation of the third sentence of section 109 which provides:

" § 109. * * * No such policy shall be issued or delivered in this state on or after July first, nineteen hundred and twenty-four, to the owner of a motor vehicle, by any corporation or other insurer authorized to do business in this state, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."

The defendant interprets the provision last quoted as requiring that all policies subject to section 109 must insure against loss by reason of bodily injury. We do not so construe it.

The purpose of this particular provision of section 109 has been judicially interpreted to be " an ' additional interest ' clause aimed to protect the public against the operation of a car by others than the owner, provided they have the owner's consent, express or implied. The primary purpose of this requirement is to meet the defense in an action on the policy that the owner was not at the time of the accident operating the car personally or by his agent, although it was being operated by a member of his family or another with his consent express or implied. (*Van Blaricom* v. *Dodgson*, 220 N. Y. 111; cf. Vehicle & Traffic Law [Cons. Laws, ch. 71], § 59.) " (*Brustein* v. *New Amsterdam Casualty Co.*, 255 N. Y. 137, 142.)

Accepting as an aid to construction this interpretation of the general purpose of the act, we would expect — in line with such a purpose — to find that the legal obligation which the statute creates attaches itself to those policies which insure against liability for bodily injury and property damage or against either type of liability as a separate risk. We believe the sentence structure lends itself to such construction. The clause involved is: " unless there shall be contained within such policy a provision insuring such owner against liability for damages for death *or* injuries to person *or* property resulting from negligence in the operation of such motor vehicle." (Italics are writer's.) We construe the clause and its context as requiring that no policy shall be issued by an insurer to the owner of a motor vehicle unless it shall contain a provision insuring such owner against liability for damages for death or injuries to the person — if the policy insures against bodily injuries, or for injuries to property — if the policy insures against property damage

alone, resulting from negligence in the operation of such motor vehicle in the business of such owner or otherwise by any person legally using or operating the same with the permission, express or implied, of such owner. Such a construction is in line with the purpose of the entire section which is " for the benefit of persons injured *or* suffering damage." (*Bakker* v. *Ætna Life Ins. Co.*, 264 N. Y. 150, 153.)

" The cardinal rule for the construction of legislative acts is to ascertain the intent of the Legislature. When that is determined the language must, if possible, be construed to make the intent effective." (*People ex rel. Steckler* v. *Warden, etc.*, 259 N. Y. 430, 433.) " Our duty is to search out the intention of the Legislature and to give effect to it when discovered though the expression be imperfect." (*103 Park Ave. Co.* v. *Exchange Buffet Corp.*, 242 N. Y. 366, 374; cf. *Archer* v. *Equitable Life Assurance Society*, 218 id. 18, 22.) The construction for which the defendant contends would defeat the purpose of the act; it would impute to the law-making body an intent to withhold the benefits of section 109 from those who have suffered property damage when — as in the case at bar — such a risk is within the authorized coverage of a fire insurance policy. Such an interpretation disregards the rule that, " In the construction of a statute, adherence to the written word will not be suffered to ' defeat the general purpose and manifest policy intended to be promoted.' " (*City Bank F. T. Co.* v. *N. Y. C. R. R. Co.*, 253 N. Y. 49, 57.) The facts of record before us strongly suggest the injustice of such an interpretation as the defendant urges, when viewed in the light of the declared purpose of the statute.

The conclusion we have reached has been influenced by the further fact that the same provision of statute (Insurance Law, § 110, subd. 7), upon which defendant relies, and which prohibits it from writing insurance for bodily injuries, expressly authorizes it to insure " against  *  *  *  loss by legal liability for damage to *property* resulting from the maintenance and use of automobiles."

Considerations of fairness and public policy originally led to the enactment of section 109 of the Insurance Law. (*Hansen* v. *Continental Ins. Co.* 262 N. Y. 136, 139.) The same considerations will not now permit us to relieve the defendant from the implied obligations which section 109 has made a part of defendant's contract of insurance.

The defendant also claims that its contract, if authorized, was one of indemnity only and solely for the benefit of the insured; that inasmuch as the assured has paid nothing by reason of the damage to plaintiff's shipment, nothing is due under defendant's policy.

The rule is otherwise. " The standard provisions provided for in section 109 are three in number and are aimed at separate recognized evils. The standard bankruptcy provision gives the injured person a remedy over against the insurance company when the judgment against the insured is uncollectible by reason of bankruptcy or insolvency. (*Merchants Mutual Automobile Liability Ins. Co.* v. *Smart,* 267 U. S. 126.) It puts an end to the rule that a contract of liability insurance is to be regarded as one of indemnity only." (*Brustein* v. *New Amsterdam Casualty Co.,* 255 N. Y. 137, 141.)

Furthermore, the bankruptcy provision of section 109 provides that in case execution in an action by an injured third party against the assured is returned unsatisfied because of the insolvency or bankruptcy of the assured, then an action may be maintained against the insurer under the terms of the policy " for the amount of the judgment in said action not exceeding the amount of the policy." It is agreed that the amount of plaintiff's judgment against the assured is $2,593.15 and that an execution issued thereon has been returned wholly unsatisfied and remains unpaid. We conclude that the amount of that judgment with proper interest measures the defendant's liability to the plaintiff.

The submitted controversy should be determined in favor of the plaintiff, with costs.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and LEWIS, JJ.

Submitted controversy determined in favor of the plaintiff, with costs.