In the Matter of F. O. BAROFF COMPANY, INC., Debtor.

AMERICAN BANK & TRUST COMPANY, Plaintiff-Appellant,

v.

Edward S. DAVIS, Trustee, Defendant-Appellee.

No. 72 Civ. 60.

United States District Court, S. D. New York.

March 25, 1976.

L. Homer Surbeck, James W. Giddens, Philip H. Curtis, Hughes, Hubbard & Reed, New York City, for the Trustee.

Stephen R. Steinberg, James Nespole, David C. Birdoff, Jane Fankhanel, Reavis & McGrath, New York City, for plaintiff-appellant.

## MEMORANDUM OPINION

PIERCE, District Judge.

This action arises in the context of the liquidation of the business of F. O. Baroff Company, Inc. (the Debtor or the Insured) pursuant to the provisions of the Securities Investor Protection Act (SIPA), 15 U.S.C. §§ 78aaa–78*lll*. The instant dispute, which represents the last substantive matter open in this liquidation proceeding, is an appeal from the ruling of the Hon. Edward J. Ryan, Bankruptcy Judge and Special Master for this liquidation, granting the Trustee's motion for summary judgment with respect to the claim of American Bank &

Trust Co. (American) for recovery of certain proceeds of an indemnity insurance policy of the Debtor, paid to the Debtor by the Insurance Company of North America (INA or the Insurer). The Special Master held that American was not entitled to the insurance proceeds recovered by the Trustee for the General Estate of the Debtor, except for that portion as to which American's application was unopposed. American's cross motion for summary judgment was denied.

The sole issue presented on this appeal concerns the application of the provisions of Section 167 of the Insurance Law of the State of New York to the facts of this case. For the reasons stated below, the Court affirms the Order of the Bankruptcy Judge.

### The Facts

The facts which are relevant to this appeal as found by the Court below are not in dispute and may be stated briefly. F. O. Baroff and Company, Inc. was engaged in business as a securities broker-dealer prior to being placed in liquidation by order of this Court dated January 6, 1972. As a member of the National Association of Securities Dealers, Inc. the Debtor was required to obtain and on July 9, 1970 did obtain an insurance policy known as a "Broker Blanket Bond". This policy, issued by INA, provided coverage, *inter alia*, for claims arising from loss sustained through dishonest and fraudulent acts of the Debtor's employees. The Debtor paid premiums on the policy and it was in full force and effect on January 6, 1972, the date of the commencement of the instant liquidation.

In January, 1970, the Debtor entered into a Collateral Loan and Security Agreement (Security Agreement) which provided that in connection with the rendering of certain services to the Debtor by American, the Debtor would deliver negotiable securities as collateral for liabilities and indebtedness to American arising under the Security Agreement. American held securities pledged by the Debtor pursuant to this Security Agreement at the time the Debtor was placed in liquidation. These securities were subsequently sold by American and the proceeds were placed in an escrow fund pending a determination of the rights of the respective parties to the proceeds of the sale.

In April, 1971, securities owned by one Esther Corey (Corey), a customer of the Debtor, were stolen from her and were sold through an office of the Debtor by means of a forged endorsement. The Debtor guaranteed the forged endorsement and the Bank, pursuant to its agreement to clear securities transactions for the Debtor, also guaranteed the signature.

Subsequently, in November, 1971, Corey brought an action against the Debtor for recovery of her losses. It is not disputed that this claim was within the terms of the INA insurance policy held by the Debtor.

In the course of negotiating with Corey concerning her claim, the Debtor agreed to pay and did pay to Corey $5,128.54 representing accrued dividends on the stolen securities. In connection with the Corey claim, the Debtor also paid to Loeb Rhodes & Co., a member of the New York Stock Exchange which had effected the sale of certain of the stolen securities on the New York Stock Exchange and which agreed to return the shares to Corey, the sum of $9,240.87 to cover the redelivery of the shares to Corey. Thus, prior to commencement of the liquidation proceeding, the Debtor paid a total of $14,369.41, directly or indirectly, in partial satisfaction of the Corey claim.

After the commencement of the instant liquidation proceeding, American applied to the Court for an order directing that certain claims which it had against the Debtor for unpaid loans and advances, interest thereon, and attorneys' fees be paid to American from the escrow fund; and, such payments, not at issue here, were made to American, leaving a balance of $79,321.62 in the escrow fund. American also contended that the "dragnet" clause of the Security Agreement with the Debtor covered certain contingent claims including the Corey claim. This position was initially disputed by the Trustee, but the issue of whether

contingent claims were covered by the Security Agreement was mooted when American paid $180,449.58 to Corey in full settlement of her claim. Thereafter, the Trustee acquiesced in the payment to American of the $79,321.62 remaining in the escrow fund as partial reimbursement for American's liability to Corey.

Having previously filed a claim with INA for $14,369.41 in connection with losses incurred with respect to the Corey claim, the Trustee filed an amended claim on July 10 and September 18, 1974 for $100,000, the limit of the Debtor's policy. This amount was received and added to the Debtor's General Estate.

In June, 1974, American filed the instant complaint asserting a right to the $100,000 proceeds of the insurance policy as compensation for American's loss of $101,127.96 on the Corey claim. The Trustee did not object to American's being paid $6,308.97 from the $100,000, representing the balance remaining after reimbursement to the Debtor of the $93,691.03 total paid by it with respect to the Corey claim. American's application was denied insofar as it sought recovery beyond the unopposed amount by the Opinion and Order of the Bankruptcy Judge dated June 20, 1975.

*Discussion*

The question presented on this appeal is whether, under the circumstances of this case as set forth *supra*, Section 167 entitles American to recover the insurance proceeds paid to the Debtor by INA. The pertinent portions of the statute provide that (a) an insurer shall not be released from its liability under a policy of insurance solely by reason of the bankruptcy of the insured, and (b) that an injured third party, with a judgment against the insured remaining unsatisfied after 30 days, may bring an action directly against the insurer.[1]

This statute was enacted as a remedial provision to correct the inequitable situation which arose under the common law rule which discharged an insurer from liability upon the bankruptcy of the insured on the theory that under such circumstances the insured, being unable to pay the injured third party, would suffer no loss. See *Coleman v. New Amsterdam Casualty Co.*, 247 N.Y. 271, 275, 160 N.E. 367 (1928). Thus, the purpose of the statute was to protect injured plaintiffs or third parties. *Larkin v. Munson S. S. Line*, 100 F.2d 393, 394 (2d Cir. 1938); *Jackson v. Citizens Casualty Co.*, 277 N.Y. 385, 390, 14 N.E.2d 446, 448 (1938). The statute has been found applicable to indemnity as well as to liability policies. See *Coleman v. New Amsterdam Casualty Co., supra*; *Skenandoa Rayon Corp. v. Halifax Fire Ins. Co.*, 245 App. Div. 279, 281 N.Y.S. 193 (4th Dept.), *aff'd*, 272 N.Y. 457, 3 N.E.2d 867 (1935).

In pressing their respective positions as to the applicability of this statute to the facts of this case, the parties rely on seemingly conflicting language contained within one Supreme Court opinion, *Merchants Liability Co. v. Smart*, 267 U.S. 126, 45 S.Ct. 320, 69 L.Ed. 538 (1925). That case interpreted

---

1. Section 167 provides, in pertinent part, as follows:

    "No policy or contract insuring against liability for injury to person . . . or against liability for injury to or destruction of, property shall be issued or delivered in this state, unless it contains in substance the following provisions . . . .:

    "(a) A provision that the insolvency or bankruptcy of the person insured, or the insolvency of his estate, shall not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of and within the coverage of such policy or contract.

    "(b) A provision that in case judgment against the insured or his personal representative in an action brought to recover damages for injury sustained or loss or damages occasioned during the life of the policy or contract, shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained against the insurer under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract."

Section 109 of the Insurance Laws of New York, the predecessor statute of the provision under consideration here.

The Trustee relies on the Court's statement that the clause which secures to the injured person the indemnity which the insured has provided for himself "becomes operative only in the event of the insolvency or bankruptcy of the assured when he can no longer use the indemnity to pay the injured person as he should." *Id.* at 131, 45 S.Ct. at 321. Further, the Trustee argues, there is no indication in the statute or case law interpreting it to mean that the legislature intended by the enactment of this statute to interfere with the contractual relation between the insurer and the insured.

American, on the other hand, relies on the language immediately following that just quoted where the Court stated:

"The title to the indemnity passes out of the bankrupt or insolvent person and vests in him in whom the contract and the state law declare it should vest. The assured is divested by the terms of the instrument under which the interest of the assured and the interest of the injured, then contingent, and now absolute, were created. The general creditors have lost nothing because by the fact of bankruptcy the interest of the assured in the policy passed to the injured person and did not become assets of the assured." *Id.*

American argues that the result sought by the Trustee would create an unjust distinction between injured third parties with a security interest in some asset of the insured and those without such an interest. Further, American argues, since in this case the collateral released to American by the Trustee was held by American pursuant to a security agreement, American always had a right to use it to reduce the amount of its claims against the Debtor's estate. See *United States National Bank v. Chase National Bank*, 331 U.S. 28, 33–34, 67 S.Ct. 1041, 91 L.Ed. 1320 (1947); *In re Pennyrich International Inc. of Dallas*, 473 F.2d 417, 421 (5th Cir. 1973). Therefore, since the collateral passed to American by virtue of

an interest which was superior to that of the Trustee, the transfer cannot be characterized as a "loss" to the General Estate.

With respect to this last point, the Court cannot agree with American's position. Had American elected not to exercise its security interest, an option which was certainly available, see *United States National Bank v. Chase National Bank, supra*; *In re Pennyrich International, Inc. of Dallas, supra*, the funds available to the General Estate would have been increased. It is this Court's view that American's exercise of its security interest effected a reduction in the funds available to the General Estate and, consequently, resulted in a "loss" to the General Estate. The question of the effect of Section 167 where the insured has suffered a loss by virtue of payments to injured third parties must therefore be addressed.

■ Unlike a policy of liability insurance, an insurer's obligation to pay an indemnity policy usually arises only when the insured sustains a loss by reason of payment to an injured third party. See *Harris v. Standard Accident & Ins. Co.*, 297 F.2d 627, 635 (2d Cir. 1961), *cert. denied*, 369 U.S. 843, 82 S.Ct. 875, 7 L.Ed.2d 847 (1962). Unless altered by statute, the insurer's obligation, even then, runs only to the insured. See *American Empire Ins. Co. of S. D. v. Fidelity & Deposit Co. of Md.*, 408 F.2d 72 (5th Cir.), *cert. denied*, 396 U.S. 818, 90 S.Ct. 55, 24 L.Ed.2d 69 (1969).

■ Section 167 does alter this principle when, by reason of bankruptcy, the insured is unable to satisfy a judgment in favor of an injured third party and will suffer no loss as a result of payments to such a party. See *Merchants Liability Co. v. Smart, supra*; *Coleman v. New Amsterdam Casualty Co., supra*. Here, however, as already set forth, there has been a loss incurred by the insured. Further, by virtue of the Debtor's previous payments, injured third parties have already received at least partial satisfaction of their claims. Under these circumstances, where payment has been made and a loss has been suffered by the insured, and the insurer has indemnified

the insured, the injured third party would have no direct right of action under Section 167 against the insurer for any sum beyond the difference between the indemnity paid and the limit of the policy. See *Harris v. Standard Accident & Ins. Co., supra* ; *Jackson v. Citizens Casualty Co., supra*. Where, as here, the injured third parties have already had recovery up to the limits of the policy by virtue of the Debtor's payments and the order of the Court below, this Court can find no statutory language or policy which would be served by a holding that the injured third parties can have further recovery against the insured, simply because the insurer has now reimbursed the insured for the loss incurred by the insured. In other words, the Court agrees with the Bankruptcy Judge that the provisions of Section 167 are intended to assure only that injured third parties shall have their right to recover under insurance policies issued in the State of New York protected against the bankruptcy of the insured up to the limits of the policy.

Viewed in the factual context of the case itself, the language in *Merchants Liability Co. v. Smart, supra*, upon which American relies is not inconsistent with this result. In that case, where the insured had gone into bankruptcy and the insurer was resisting payment directly to an injured third party, there was no loss to the General Estate by virtue of the payment to the third party by the insurer because the insured had made no payment itself. Thus, because of the statutory provision, the title to the indemnity passed to the third party. Here, where the insured has made payments and suffered loss, the third parties have already received all the relief provided by the statute, that is, recovery up to the limit of the policy. For the same reasons, the language in *In re Fay Stocking Co.*, 95 F.2d 961 (6th Cir. 1938) with respect to the vesting in the injured claimant of title to the proceeds of a liability insurance policy is inapplicable to the present case.

The order of the Court below is affirmed in all respects.

SO ORDERED.