In the Matter of **PENNYRICH INTERNATIONAL, INC. OF DALLAS, Bankrupt.**
**LANE INDUSTRIES, INC., d/b/a Century Studios, Appellant,**

v.

**Harold C. ABRAMSON, Trustee, Appellee.**

No. 72–1928.

United States Court of Appeals, Fifth Circuit.

Feb. 8, 1973.

Rehearing Denied March 13, 1973.

sum of $45,390.98 may be an incorrect amount even if some deduction is allowed.

ate under all the facts and circumstances of this case, we affirm.

Prior to the institution of the instant bankruptcy proceedings, claimant, Lane Industries, Inc., d/b/a Century Studios, received an order from the bankrupt, Pennyrich International, Inc. of Dallas, to manufacture two promotional motion picture films.[1] After the films had been completed, but before delivery had been made, the bankrupt became insolvent. The films have never been delivered and the bankrupt had never tendered payment for them.

The bankrupt filed a Chapter XI proceeding, 11 U.S.C. § 701 et seq., on November 28, 1969, and was adjudicated bankrupt on February 12, 1970. On April 13, 1970, claimant filed the amended proof of claim with which we are here concerned. The claim was filed as unsecured "except as to $50.00 secured value" and was composed of the following items:

| | |
|---|---|
| Balance due on the first film | $32,216.00 |
| Balance due on the second film | 20,196.80 |
| Balance due on open account | 9,720.68 |
| Claim for attorney's fees | 15,000.00 |
| TOTAL | $77,133.48 |

On May 1, 1970, special counsel for the trustee wrote a letter to claimant's attorney that stated:

"In reviewing the claims of this matter, it has come to my attention that your client is in the position of a secured creditor. As [claimant] still has in its possession the asset upon which your claim is based, I am requesting by this letter that you confer with your client and place a valuation on the asset. This can be done through the provision of Section 57 of the Bankruptcy Act [11 U.S.C. § 93(h)]. In the alternative, I request that you turn the films over to the Trustee and we shall auction them off as an asset of the estate.

"If you feel this matter cannot be worked out in this way, please let me know and I shall prepare the necessary show cause order."

Robin P. Hartmann, Dallas, Tex., for appellant.

G. Dennis Sullivan, Dallas, Tex., for trustee.

Before GOLDBERG, AINSWORTH and INGRAHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

This is an appeal from an order reducing a claim made by a secured creditor against a bankrupt estate. The standard procedures for valuing the security were not followed, and the principal question before us is whether a referee in bankruptcy may ever assign a date not specifically authorized by statute as the time for valuing the security. Finding that the referee's action in creating such an exception to the "standard" valuation procedure was appropri-

---

1. The first film, "Cavalcade," depicted the Pennyrich organization in operation. The second, "Pirate," displayed various products made by the bankrupt.

Claimant did not make the requested valuation, turn the films over to the trustee, or advise the trustee that the valuation could not be reached without court involvement.

On May 19, 1970, a compromise and settlement for the benefit of all unsecured creditors was reached. Although claimant was not a party to that agreement, claimant was later found to have had full knowledge of it.

Throughout this time period, claimant made some attempts to solicit offers to purchase the films but apparently was never given an actual offer. Due to the specific content of the films, only a very limited potential market was available, and due to the constant updating of the design of the products involved, the films soon approached obsolescence and their value diminished to a nominal level.

The trustee filed an objection to the instant claim and a hearing before the bankruptcy referee was held on March 24, 1971. On April 24, 1971, the referee entered detailed findings of fact and conclusions of law and entered an order that (1) allowed the claim for the films, but only after reducing the amount substantially, (2) allowed the entire claim on the open account, and (3) disallowed entirely the claim for attorney's fees.[2]

To compute the allowable amount of the claim for the films, the referee determined the value of the films as of May 19, 1970. Characterizing that amount as the secured portion of the claim, the referee subtracted it from the total claim for the films and thereby ascertained the allowable unsecured portion.[3] The referee thus effectively held that when claimant, a secured creditor, failed to value the films itself, surrender the films to the trustee, or seek a

court evaluation, it assumed the risk of the films' declining in value after May 19, 1970, the date of the major compromise and settlement. Finding that it was unreasonable for claimant to continue holding the films without taking more affirmative action after that date, the referee utilized May 19, 1970, as the date of valuation.

A petition for review of the referee's order, duly certified, was filed in the United States District Court for the Northern District of Texas. That court sustained the referee's findings of fact and conclusions of law and overruled the petition for review. This appeal is brought from that order. The only issue before us is whether the claim regarding the two films was properly disposed of below. We hold that it was.

### I.

The referee below explicitly found that claimant was a secured creditor as to its claim regarding the two films. That finding is an essential preliminary determination that must be made before applying the provisions of § 57(h) of the Bankruptcy Act, 11 U.S.C. § 93(h), discussed at length *infra*. It is only where the creditor is secured that § 57(h) is applicable, and our first task is thus to decide whether the referee's determination was correct.

The Bankruptcy Act defines the term "secured creditor" as follows:

" 'Secured creditor' shall include a creditor who has security for his debt upon the property of the bankrupt of a nature to be assignable under this title or who owns such a debt for which some endorser, surety, or other person secondarily liable for the bankrupt has such security upon the bankrupt's assets."

---

2. The disallowance of attorney's fees was based on the reasoning that such fees are not allowed on unsecured claims. That part of the referee's order is not before us on this appeal, and we pretermit any discussion of it.

3. The referee determined that the films had a total market value of $25,000.00 on May

19, 1970. After subtracting that amount and the disallowed $15,000.00 attorney's fees, claimant was (1) allowed $37,133.48 of the $77,133.48 sought, and (2) left in possession of the films, which claimant was free to dispose of as any ordinary security.

11 U.S.C. § 1(28). *See also* Ivanhoe Bldg. & Loan Ass'n v. Orr, 1935, 295 U. S. 243, 55 S.Ct. 685, 79 L.Ed. 1419. Here, the referee ruled that claimant was a secured creditor because it held the films that were produced for the bankrupt as security. The conclusion that the films were the property of the bankrupt within the meaning of the Bankruptcy Act is entirely correct. *Cf.* United States Nat'l Bank v. Chase Nat'l Bank, 1947, 331 U.S. 28, 67 S.Ct. 1041, 91 L.Ed. 1320; Gorman v. Wright, 4 Cir. 1905, 136 F. 164. Additionally, claimant itself stated in its amended proof of claim that it was asserting a "[statutory] artisan's possessory lien upon motion pictures made for debtor." *See* Tex.Rev.Civ.Stat.Ann. art. 5483. These facts are not disputed, and we hold that the referee did not err in finding that this claimant was a secured creditor.[4]

## II.

The principal rights held by secured creditors against bankrupt estates are governed by statute. This case is primarily governed by § 57(h) of the Bankruptcy Act, 11 U.S.C. § 93(h), which provides as follows:

> "The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors, or by such creditors and the trustee by agreement, arbitration, compromise or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance. Such determination shall be under the supervision and control of the court."

The Supreme Court has said that under this and other provisions of the Bankruptcy Act, "there are several avenues of action open to a secured creditor of a bankrupt." United States Nat'l Bank v. Chase Nat'l Bank, 1947, 331 U.S. 28, 33–34, 67 S.Ct. 1041, 1044, 91 L.Ed. 1320, 1323–1324. In that case, the Court compiled the following list of options that are available to a secured creditor as against a bankrupt estate:

(1) The creditor may disregard the bankruptcy proceeding, decline to file any claim, and rely solely upon his security if that security is properly and solely in his possession. In re Cherokee Public Service Co., 8 Cir. 1938, 94 F.2d 536; Ward v. First Nat'l Bank, 6 Cir. 1913, 202 F. 609.

(2) If the security is within the jurisdiction of the bankruptcy court and if the creditor wishes to retain his secured status, he must file a secured claim, because that court has exclusive jurisdiction over the liquidation of the security. Isaacs v. Hobbs Tie & Timber Co., 1931, 282 U.S. 734, 51 S. Ct. 270, 75 L.Ed. 645.

(3) The creditor may surrender or waive his security and prove his entire claim as an unsecured one. Morrison v. Rieman, 7. Cir. 1917, 249 F. 97.

(4) The creditor may avail himself of his security and share in the general assets as to the unsecured balance. Merrill v. National Bank of Jacksonville, 1899, 173 U.S. 131, 19 S.Ct. 360, 43 L.Ed. 640.

We think it obvious that the creditor's actions here have brought its case within the fourth option. Claimant

---

4. The question of whether a creditor fits the statutory definition is often one of fact, and as such, it is usually subject to the "clearly erroneous" standard of review under Fed.R.Civ.P. 52(a). *See* United States v. National Furniture Co., 8 Cir. 1965, 348 F.2d 390, 392. Here, however, claimant does not dispute the operative facts; rather, it argues that it is "simply a seller whose buyer breached the purchase contract prior to delivery." Even if this is an accurate description of claimant's relationship to the bankrupt, it does not *ipso facto* refute the contention that the debt owed under the contract is secured.

at all relevant times retained possession of the security, and it stated in its proof of claim that, at least in part, the claim was filed as secured. Being unhappy with the value that the referee assigned to the security, claimant now seeks to avoid being characterized as a secured creditor, a result that we have rejected *supra*. Claimant argues in the alternative, however, that even if it is a secured creditor, the proper procedures for effectuating the fourth option were not followed by the referee.

### III.

Before analyzing the existing law regarding the fourth option, its context and purpose must be understood. The Supreme Court in United States Nat'l Bank v. Chase Nat'l Bank, *supra*, found that section 57(h) of the Bankruptcy Act, 11 U.S.C. § 93(h), is a codification of the fourth possibility:

"It permits the secured creditor to receive dividends along with the general creditors only on the balance remaining after the value of the security has been determined and deducted from the claim. This rule, commonly known as the bankruptcy rule, is designed to preclude any unwarranted advantage from accruing to the secured creditor. Grounded upon the statutory principle of equality and ratable distribution, it prohibits the secured creditor from reaping the whole benefit of his security while simultaneously taking dividends from the general assets on the basis of his entire claim as if he had no security. This rule differs from the one in equity, which allows the secured creditor to receive dividends on the full amount of his claim, crediting all dividends received and reserving the security against any deficiency."

331 U.S. at 34, 67 S.Ct. at 1044, 91 L. Ed. at 1325. The filing of proof of a secured claim implies that the secured creditor expects his security to satisfy only part of the debt and serves to announce that he wishes to participate in the estate, together with the general creditors, for the unsecured balance of the claim. 3 Collier on Bankruptcy ¶ 57.07 at 169.

Here, the referee treated claimant's case as being an exercise of his free choice to select which option to pursue. We agree that this was a correct analysis of the case. The only question remaining is whether § 57(h) was properly applied in computing the value of the security, which was deducted from the entire claim to arrive at the unsecured portion.

### IV.

Section 57(h) of the Bankruptcy Act prescribes two alternative methods for fixing the value of the security. The first presupposes an existing agreement, such as a mortgage agreement that allows the creditor to sell the security in the event that the debtor defaults. No such agreement existed here. The second statutory method is by "agreement, arbitration, compromise, or litigation as the court may direct." Unfortunately, the statute does not on its face assign to anyone the "duty" of seeking a valuation under the second method. Hence, where there is no agreement and where neither the claimant nor the trustee has sought court intervention, which is the posture of this case, the valuation cannot be made until the hearing on the trustee's objection to the claim is held. The dispositive issue, then, is what point in time the referee should look to for setting the value of the security.

In re Salmon Weed & Co., 2 Cir. 1931, 53 F.2d 335, suggests that it would be unreasonable to require the creditor to liquidate the security or seek a determination of value *immediately* upon the filing of a petition in bankruptcy. Rather, the usual procedure should be to set the value as of the date of the determination itself or on the date of actual liquidation. *See, e. g.,* Sehon-Stevenson & Co. v. Union Trust Co., 4 Cir. 1940, 113 F.2d 968. Although we agree that the se-

cured creditor is to be given much latitude in presenting his claim, we also agree that the normal methods for determining the value of the security may be suspended where the delay in obtaining an evaluation "is attributable to gross negligence or wanton disregard of the interests of other creditors." 3 Collier on Bankruptcy ¶ 57.20 at 326.

Claimant's course of action is elucidated by the following excerpt from the hearing before the referee:

THE COURT: "Well, at that time under those circumstances when it appeared there was that possible limited market, why didn't you tender [the film] into court as an asset of the estate and rely then on your unsecured claim? Why did you decide to hold on to your lien, hold on to the film?"

MR. YOUNGBLOOD [attorney for claimant, testifying as a witness]: "Well, because there still existed a possibility, in other words, Mr. Glaspy [representative of Miss Alberta Penny Rich, a principal stockholder in the bankrupt corporation] had indicated that a sale would be possible if Penny became—became rich again and Mr. Palmer [the attorney representing the purchaser of most of the bankrupt's assets], although not indicating any specific figure that he would pay, had indicated that there was some interest in it."

Although claimant vigorously denies any such motivation, the implication that it was speculating at the expense of the other creditors is obvious. If a buyer could be found and if the value of the films remained constant, or if their value rose, claimant could sell the films, pocket that cash, and recover the balance as an unsecured debt. If, on the other hand, the value of the films declined or if no buyer stepped forward, claimant could have the value determined at a nominal level and recover virtually all of the claim as an unsecured debt. Neither law nor reason compels us to leave claimant with the unrestrained power to speculate in such a fashion.

We find that the referee realized the just rule and applied it to this case, and we are in agreement as to the propriety of his order. Finding that it was unreasonable and negligent for claimant to continue holding the films without taking any affirmative action either to dispose of them or to obtain a formal valuation, the referee valued the films as of the last day of the period beyond which claimant's action was unreasonable. The question of reasonableness is primarily a factual one, and as such, it is subject on review to our "clearly erroneous" standard. Fed.R.Civ.P. 52(a). In concluding that claimant's behavior was unreasonable, the referee below had before him evidence of claimant's knowledge of the extremely limited potential market for the films and of the rapidity with which their value could decline. Furthermore, the referee explicitly found that the films had a salable market value of $25,000 on May 19, 1970.[5] This was the date beyond which the referee found claimant's inaction to be unreasonable, and as such, it was an appropriate date for assigning a value to the films.

In essence, then, it was found as a factual matter that claimant could have sold the films on May 19, 1970, for $25,000, that claimant was aware that the films would decline in value, and that claimant could only speculate that it would be able to liquidate the security. To value the films at their subsequent lower level on a later date would be to deprive the other creditors of funds that would have been available had claimant not been negligent in failing to liquidate the asset or obtain a valuation at that time.

5. That finding was apparently based on direct testimony regarding what one of the interested parties was "authorized to pay" for the films. That evidence alone is sufficient to sustain the finding. *See* Fed.R. Civ.P. 52(a).

■ We should not be understood as holding that the secured creditor has a duty to seek valuation at a given time or that he must always bear the risk of the security's declining in value. Rather, we recognize only a limited exception to the usual rules for selecting the date on which the security is to be valued. After an adjudication of bankruptcy and after a creditor has clearly indicated that he will rely, at least in part, on a security to satisfy his claim, the creditor will not be allowed to gain by waiting beyond a period reasonable under all the circumstances of the case to establish the value of the security. To deny the secured creditor the privilege of having the date of valuation assigned by the normal methods, two fact-findings are necessary: (1) that the secured creditor knew or should have known that the value of the security was likely to decline, and (2) that the secured creditor's failure to obtain an earlier valuation was either grossly negligent or in wanton disregard of the rights of the other creditors. If both those conditions existed, the security should be valued as of the last day of the period beyond which it was unreasonable to continue failing to obtain a valuation.[6]

This exception has two salutary effects. First, it places the risk of loss, should the security decline in value, squarely on the person who is best able to appreciate and avoid the problem. The administration of a bankrupt estate is a compound of equity and common sense, and a bankruptcy court seeks no less than any other court to do justice and reach equitable results. Secondly, the exception will in many cases facilitate the speedy administration of the bankrupt estate:

"One purpose of the Bankruptcy Act . . . is to provide that the estate in bankruptcy be settled with reasonable expedition. A reasonable time should be allowed for the liquidation of the security. What constitutes a reasonable time must be considered in the light of the circumstances."

In re Rochester Pad & Wrapper Co., W.D.N.Y.1937, 20 F.Supp. 295, 297. As the Supreme Court said in another context:

"[H]istorically one of the prime purposes of the bankruptcy law has been to bring about a ratable distribution among creditors of a bankrupt's assets; *to protect the creditors from one another.*"

Young v. Higbee Co., 1945, 324 U.S. 204, 210, 65 S.Ct. 594, 89 L.Ed. 890, 896 (emphasis added).

■ Section 57(h) provides that the determination of the value of the securities "shall be under the supervision and control of the court." This clearly does not license a creditor to make a unilateral determination of the value of his security. The court, through its surrogate, the referee, makes the initial valuation, which is subject to review by the district court. No procedural minutiae having been set out in the Act, the only logical and reasonable interpretation would be for the determination to be made in connection with the allowance of the claim and for the value of the security to be determined by applying the norm that a prudent businessman would employ to dispose of an asset. A secured creditor of a bankrupt cannot cynically play a game of "heads I win and tails you lose." He must make prudent judgments regarding the retention or

---

6. 3 Collier on Bankruptcy ¶ 57.20 at 327, states the exception as follows:

"The basic principle is not to select some arbitrary date, however theoretically convenient, but to answer the question: what was the creditor under the circumstances in a legal and factual position to undertake? If he was bound to submit to the court's orders, this should entirely eliminate the date of

bankruptcy as the decisive day. If he was not so bound, it remains to be examined whether his passivity was due to a mere desire to speculate at the expense of others, or can be said to be negligent as measured (without hindsight) by the standard of a reasonably prudent business man, or was merely due to a desire to await the decision of the court."

disposition of his security. Otherwise the unsecured creditors become the guarantors of the secured creditor's claim. No one is endowed with such economic wisdom or prescience as to be able to pick a day for a perfect sale, but at the same time one creditor cannot be allowed to await the advent of a practically valueless day, relying on other assets to bail him out of the predicament he knew was coming. We will not put the secured creditor to a Hobson's choice, but neither will we throw away the bankrupt estate's brake by allowing the secured creditor to ordain himself a free wheeler.

United States Nat'l Bank v. Chase Nat'l Bank, *supra,* in many ways the Book of Hoyle for these cases, speaks of designing rules of play that "preclude any unwarranted advantage from accruing to the secured creditor." The administration of bankrupt estates cannot be so much like a game of chance that secured creditors must be allowed to look at the hole card before placing their bets on the table. Claimant would have us so exalt form over substance that he would be allowed to sit back, watch the cards fall where they may, and then make a post-hoc determination of which card should be played. We decline to do so, and we leave with the referee, who makes the requisite fact-findings, the power initially to determine how the cards should be dealt. The secured creditor need not always be allowed to play the security as though it were a wild card.

Neither dispositional bravado nor extreme timidity are given to a secured creditor, and he cannot play a game of hide and seek with the trustees or the trustees' wards—the unsecured and general creditors. With prudence as our watchword, we do not say that a secured creditor must sell at the optimal moment, but he is charged with doing more than clutching his security while resting secure in the knowledge that if he acts imprudently the other creditors will purge his error. Gamble he may, but at his own risk. The referee's valuation date was neither arbitrary nor capricious, and his judgment was validated by the district court.

Affirmed.