In re Carl SAVLOFF and Helene Savloff, Individually and as Tenants by the Entireties, Debtors.

Carl SAVLOFF and Helene Savloff, Individually and as Tenants by the Entireties, Plaintiffs,

v.

CONTINENTAL BANK and West Wholesale Drug Company and Genesis Leasing Corporation and Paul T. Bockenhauer, Ind. & t/a Woodcutter Co., Defendants.

Bankruptcy No. 79–01911G.
Adv. No. 79–0011G.

United States Bankruptcy Court,
E. D. Pennsylvania.

May 16, 1980.

Erwin L. Pincus, Cohen, Pincus, Verlin, Hahn, Reich & Sherzer, Philadelphia, Pa., for plaintiffs.

Barry N. Shaw, Philadelphia, Pa., for Continental Bank, defendant.

Sheryl L. Auerback, William J. Moses, Dilworth, Paxson, Kalish, Levy & Kauffman, Philadelphia, Pa., for West Wholesale Drug Co., defendant.

Alvin M. Chanin, Philadelphia, Pa., for Paul T. Bockenhauer, Ind. and t/a Woodcutter Co., defendant.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

While the ostensible purpose of the complaint presently at bench is for a "determination (under § 506 of the Bankruptcy Code) of the secured status" of the existing liens against the debtors' residence,[1] the real thrust of the debtors' action is to determine the value of the collateral held by said lien creditors so that the debtors may decide whether to relinquish it or keep it and make arrangements to repay those secured creditors who have realizable security interests.[2]

1. See Complaint filed November 6, 1979.

2. This statement of the debtors' real purpose is taken from their memorandum of law filed March 14, 1980. There was, in fact, virtually no evidence introduced as to the value of each secured creditor's claim. What is more, in their schedules, the debtors list the amount of each secured creditor's claim and show (in the blocks specifically provided for that purpose) that the claims are undisputed.

We determine that the value of the debtors' residence is $207,500.00.

The facts are as follows:[3] The debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on October 10, 1979. Listed in their schedules is their residence, located at 504 Waldron Park Drive, Haverford, Pennsylvania, which they had purchased one year earlier for $172,500.[4] Having added $35,000.00 worth of improvements,[5] one might conclude (in this inflationary era) that the property would be worth at least $207,500.00. However, debtors, in said schedules, valued their property at only $140,000.00.

Section 506(a) of the Code provides that the value of collateral security shall be determined in light of the purpose of the valuation and the proposed disposition of the property.[6] Since we are unable to find any precedent interpreting this new section, we will look to cases under Section 57(h) of the Bankruptcy Act, 11 U.S.C. § 93(h)[7] which, of course, was repealed when the Bankruptcy Code was enacted. We should, at this point, note that, in the legislative debate which accompanied the passage of § 506(a) of the Code, consideration was given to the meaning of the word "value."

"Value" does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case.

House Report No. 95–595 at p. 356, U.S. Code Cong. & Admin.News 1978, pp. 5787, 6312.

At the trial of this issue, the debtors sought to introduce testimony to show what this property would bring at a sheriff's sale in a foreclosure proceeding. But the argument against the use of liquidation value as a measure of the worth of an item of collateral is well presented in *In re American Kitchen Foods*, 2 Bankr.Ct.Dec. 715 (N.D. Me., 1976). There, the court adopted a standard of commercial reasonableness for valuation of collateral which standard it borrowed from Section 9–504(3) of the Uniform Commercial Code.[8] The standard rec-

---

**3.** This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

**4.** See N.T. at 11–12.

**5.** See N.T. at 21–22.

**6.** Section 506(a) provides that:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

**7.** Section 57(h) of the Bankruptcy Act states:

h. The value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors, or by such creditors and the trustee by agreement, arbitration, compromise or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance. Such determination shall be under the supervision and control of the court.

**8.** Section 9–504(3) of the U.C.C. states:

Secured Party's Right to Dispose of Collateral After Default; Effect of Disposition

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of

ommended was that amount which would be obtained from "the most commercially reasonable disposition practicable under the circumstances."[9] In discussing the use of liquidation value in appraising collateral, the *American Kitchen* court stated:

> The customary practice in bankruptcy courts has been to use forced sale valuations for all appraisals, without sufficient regard to the nature of the proceedings. But the bankruptcy court is neither constitutionally nor otherwise required to reject more commercially reasonable collateral conversion methods in preference for forced sales at levels which substantially worsen the losses of all parties to the proceedings, including the secured party.
>
> The competitive chill generated by forced sales is notorious and relentless. Forced-sale valuations should be confined to use in cases where the circumstances of the debtor and the nature and condition of the collateral and its marketplace leave no commercially reasonable alternative. Where there is no practicable alternative except to submit to the influence of bargain basement buyers, sanguine in the knowledge that salvage recoveries will reward their wait, "judicial sales" may be appropriately associated with forced-sale or liquidation recoveries, which is commonly the case in ordinary bankruptcy proceedings where collateral must be disposed of almost immediately, "as is" and at minimal expense.

Id. at 722.

In *In re Pennyrich, Inc. of Dallas*, 473 F.2d 417 (5th Cir. 1973), the court addressed the problem of appraising collateral which had declined substantially in value in the hands of the secured party. Since no guidance had been set forth in the Bankruptcy Act, the court held that the only reasonable interpretation of Section 57(h) would be to value the collateral by "applying the norm that a prudent businessman would employ to dispose of an asset."[10]

We are persuaded by the rationale of the Fifth Circuit that the value of collateral security should be determined by the amount which would be obtained from the most commercially reasonable disposition practicable under the circumstances. We conclude that, only in the rarest of circumstances, where other methods of disposition are precluded, should the property be valued at what it would bring at forced sale.

At the trial of this issue both the debtors and the junior lienor, West Wholesale Drug Company, presented expert testimony as to the fair market value of the property. The debtors' expert testified that the fair market value was $180,000.[11] On the other hand, West Wholesale Drug Company's expert testified that the property would be worth $200,000 even if no improvements had been made. Since $35,000 of improvements *had* been made, he testified that the property could sell for an amount in excess of $235,000, provided that the property was properly advertised and the right buyer was found.[12]

Since we must evaluate the property "in light of the purpose of the valuation,"[13] and since that purpose, in the instant case, is (as the debtors concede in their brief) to determine whether they want to repurchase the property, we give little credence to the debtors' scheduled evaluation of $140,000.00.

Furthermore, we find the figure of $180,000, submitted by the debtors' appraiser, to be too low in light of the fact that the property was purchased just twenty months ago for $172,500 and had improvements of $35,000 added to it. On the other side of

the debtor in this state or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

**9.** 2 Bank.Ct.Dec. at 722.

**10.** 473 F.2d at 424.

**11.** *See* N.T. at 42.

**12.** *See* N.T. at 57–58.

**13.** Sec. 506(a) of the Code.

the coin, we find the evaluation of $235,-000.00, submitted by the lien creditor's expert to be too speculative, since the appraiser testified that that figure could be realized only if there was an indefinite period in which to sell the property.

We conclude, after considering all of the evidence and after giving due consideration both to the inflationary spiral of our time and to the depressing effect of high interest rates on the real estate market, that the value of the debtors' residence is worth what they paid for it ($172,500.00) in September of 1978, plus the cost of the improvements ($35,000.00) that were then added.

### ORDER

AND NOW, to wit, this 16th day of May, 1980, after hearing, it is hereby

ORDERED and DETERMINED that the property located at 504 Waldron Park Drive, Haverford, Pennsylvania, owned by the debtors, Carl and Helene Savloff, is valued at $207,500.00.