In the Matter of Keith & Susan VAN NORT, Debtors.

CHRYSLER CREDIT CORPORATION, Claimant,

v.

Keith VAN NORT, Debtor.

Bankruptcy No. 79–03889–P.
Adv. No. 80–0256.

United States Bankruptcy Court,
E. D. Michigan, S. D.

Feb. 20, 1981.

UAW Legal Services Plan by Nora Lee Wright, Detroit, Mich., for debtors.

Eames, Wilcox, Mastej & Bryant by Henry J. Mittelstaedt III, Detroit, Mich., for Chrysler Credit Corp.

## OPINION

DAVID H. PATTON, Bankruptcy Judge.

This matter is before the Court to resolve a controversy arising from a dispute between the debtors, Keith and Susan Van Nort, and Chrysler Credit Corporation over the valuation of an automobile. Valuation is necessary because Chrysler Credit has objected to confirmation of the debtors' Chapter 13 plan on the ground that the amount to be distributed to it on account of its allowed secured claim is less than the value of its security interest in the vehicle. The hearing required [1] by the Code has been held. The facts material to the issue in this matter are not disputed.

1. 11 U.S.C. § 1324.

Chrysler Credit is a secured creditor of the debtors, having been granted a security interest in their 1977 Plymouth Volare as part of a contractual arrangement through which it finances purchases from automobile dealerships. Under this arrangement Chrysler Credit will in certain instances require, as a condition of its agreement to provide financing, that the selling dealer agree to repurchase the vehicle in the event it is repossessed from the purchaser. Such an agreement was in effect with regard to the Van Norts' Volare.[2]

Appraisal of the vehicle established that it had a wholesale value of approximately $2,000.00 and a retail value some $800.00 to $1,000.00 higher, based on what the vehicle would bring if sold through normal commercial channels. The proposed plan provides for the payment of $2,900.00 to Chrysler Credit. It is the Van Norts' position that this amount adequately compensates Chrysler Credit for the value of its secured claim. Chrysler Credit disputes this valuation of its claim and argues that the plan should not be confirmed over its objection. The issue is whether in these circumstances the plan can be confirmed.

The criteria for confirmation of a Chapter 13 plan are contained in § 1325 of the Code.[3] Under this section a plan which provides for payments to the holder of a secured claim can be confirmed over the objection of that creditor if the creditor retains its lien and "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B). This language has been interpreted to mean that a Chapter 13 plan can be confirmed with regard to a secured creditor where "the plan provides that the secured creditor retain its lien and be paid the value of its collateral as of the effective date of the plan." *In re Lum*, 1 B.R. 186, 1 C.B.C.2d 95, 96 (Bkrtcy.E.D.Tenn.1979). Since the lien requirement is not in dispute[4] the main inquiry must be whether the collateral value of Chrysler Credit's interest is greater than the proposed payment under the plan.

The equation established in § 1325(a)(5)(B)(ii) requires a determination of the value of Chrysler Credit's secured claim. In § 506(a) it is stated that when a claim is secured by a lien on property it is secured only to the extent of the value of the creditor's interest in the estate's interest in the property. 11 U.S.C. § 506(a). Value is not defined. Chrysler Credit argues that the second sentence of § 506(a) requires that its right to recourse against the selling dealer must be taken into account in determining such value. That sentence states:

"... value shall be determined in light of the purpose of the valuation and the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a).

This language, however, must be viewed in the context of the concern of Congress, revealed by legislative history, with the sit-

**2.** In pertinent part, the "Vehicle Financing and Repurchase Agreement" provides:

"3. REPURCHASE OBLIGATION. We [the dealership] agree to purchase from you [Chrysler Credit] ... and to pay to you in cash the repurchase price computed in accordance with ... this Agreement if you have repossessed the Vehicle ... and tendered delivery to us ...

4. REPURCHASE PRICE. The repurchase price which shall be paid with respect to a Repossessed Vehicle shall be an amount equal to the total of unpaid installments on the related Contract on the date of the repurchase plus (i) all reasonable expenses of your employees or agents incurred in connection with the repossession of the Repossessed Vehicle and (ii) the cost of transporting the Repossessed Vehicle in excess of 300 miles, less (i) the unearned portion of the finance charge computed on the date of payment of the Repurchase Price on the basis of the Rule of 78, (ii) the unearned portion of the insurance premium included in the Contract, if any ... and (iii) the amount, if any, of the Damage Adjustment ..."

**3.** 11 U.S.C. § 1325.

**4.** Paragraph 2(c) of the proposed plan provides: "Holders of ... secured claims shall retain the lien securing such claims until payment of their allowed claim."

uation sometimes created under pre-Code law in which a creditor who had taken a position on valuation at an early stage of a bankruptcy case was adversely affected at later stages of the proceeding if forced to adhere to that position.[5] In a valuation necessitated by the need to determine whether payments to be made to the holder of a secured claim under a proposed Chapter 13 plan satisfy the requirements of § 1325(a)(5)(B)(ii), the focus of inquiry must be on the interests that section is designed to protect, and valuation must be made with regard to those interests.[6]

Under § 1325 Chrysler Credit is entitled to protection of the value of its allowed secured claim. Under § 506(a) that claim is limited to the creditor's interest in the estate's interest in the property subject to the lien. In § 101(28) "lien" is defined to mean a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(28). The interest which must be protected is therefore the interest the creditor has in the property as collateral. To do more would protect not only the creditor's right to realization of the value of property in which he has a security interest when his ability to realize that value is modified in a proceeding under the bankruptcy statute, but would also give the creditor at least a measure of the value of his debt in excess of that amount. Under § 506(a) partially secured claims against a debtor are divided, resulting in secured and unsecured claims. The interests a creditor may have arising from the unsecured portion of his claim are dealt with elsewhere in § 1325.[7] The interest protected by § 1325(a)(5) is the right a creditor has to realize the value of certain property—the property subject to its lien.

• ▆▆▆ Based on this analysis the value which must be determined is the collateral value. This is the value which Chrysler Credit could realize from the property if it foreclosed its lien and disposed of the property in a commercially reasonable manner. The fact that it might obtain more than the amount through the operation of a recourse agreement does not entitle it to a higher valuation for its secured claim. *In re Willis,* 2 B.R. 566, 2 C.B.C.2d 141 (Bkrtcy.W.D. N.C.1980); *In re Jones,* 5 B.R. 736, 6 BCD 965 (Bkrtcy.E.D.Va.1980). This is equally true where for other reasons a particular item of collateral may bring an amount higher than its market value if disposed of by a creditor. What must be protected is the right to realize an amount *from the property* subjected to a lien equivalent to what could be realized by selling it through established commercial channels. *In re Savloff,* 4 B.R. 285, 2 C.B.C.2d 56 (Bkrtcy.E. D.Penn.1980); *In the Matter of American Kitchen Foods, Inc.,* 2 BCD 715 (Bkrtcy.Me. 1980). While a particular item or type of property may have a value to a particular creditor greater than what would be realized in a reasonable commercial disposition such value does not represent collateral value protected by § 1325(a)(5). 11 U.S.C. § 1325; 11 U.S.C. § 506(a); 11 U.S.C. § 101(28).

▆▆▆ The value which Chrysler Credit could expect to receive from the liquidation of its security through commercial channels is the wholesale value. *In the Matter of Adams,* 2 B.R. 313, 1 C.B.C.2d 417 (Bkrtcy. M.D.Fla.1980). This value can be established through appraisal, as it was in this case, or by reference to listings of automobile sources.[8] The time for valuation is the

---

5. S.Rep.No.989, 95th Cong., 2nd Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, 5787; 124 Cong.Rec.H 11,111 (daily ed. Sept. 28, 1978); S 17.428 (daily ed. Oct. 6, 1978). See also *In the Matter of Crockett,* 3 B.R. 365, 1 C.B.C. 926 (Bkrtcy.N.D.Ill.1980).

6. This focus is again revealed in the legislative history. See, e. g., H.R.Rep.No.595, 95th Cong., 1st Sess. 356 (1977), U.S.Code Cong. & Admin.News 1978, 5787. It also seems consistent with the valuation procedures contemplat-

ed under § 57(h) of the prior Act and Bankruptcy Rule 306(d).

7. 11 U.S.C. § 1325(a)(4).

8. In *American Kitchen Foods* Judge Cyr enunciated a standard for collateral valuation based on "commercial reasonableness," stating, "the value of . . . collateral is equatable with the net recovery realization from its disposition as near as may be in the ordinary course of business. 2 BCD at 720, 722. In this case the ordinary

time of the filing of the petition. *In the Matter of Adams*, supra; *In the Matter of American Kitchen Foods, Inc.*, supra. At that time the wholesale value of the Van Norts' Volare was approximately $2,000.00. This is the amount of Chrysler Credit's allowed secured claim and the minimum amount which must be distributed for the plan to be confirmed over its objection. 11 U.S.C. § 1325(a)(5).

 The $2,900.00 to be distributed under the proposed plan on account of this secured claim therefore exceeds the amount of such claim. However, the payment is to be made over a four (4) year period[9] and must be discounted to reflect its present value on the effective date of the plan. *In re Ziegler*, 6 B.R. 3, 6 BCD 194 (Bkrtcy.S.D. Ohio 1980). If the $900.00 by which the proposed payment exceeds the allowed secured claim represents a sufficient adjustment for the discount, or viewed another way, provides a rate of interest high enough to adequately compensate Chrysler Credit for the fact that it will realize the value of its security over a four (4) year period, then § 1325(a)(5)(B) is satisfied and the plan can be confirmed. *In re Miller*, 4 B.R. 392, 2 C.B.C.2d 212 (Bkrtcy.S.D.Cal. 1980); *In re MeLeod*, 2 C.B.C.2d 319 (Bkrtcy.N.D.Ga.1980).

If $2,000.00 is taken as the principal amount, the proposed plan provides for the payment of 11.25% simple interest. This rate is greater than the prevailing rate required by Michigan law[10] and represents a realistic effort to provide Chrysler Credit with an amount close to true present value.[11] In this Chapter 13 context and in view of the small amounts involved, a long

controversy regarding interest is not justified.[12] It is the Court's conclusion that § 1325(a)(5) is satisfied and the plan can be confirmed despite Chrysler Credit's objection.

Since objections have been raised to other aspects of the proposed plan, the effect of this determination is limited to resolution of this adversary proceeding.

---

course of business would seem to be a quiet resale to a knowledgeable professional buyer, the type of sale which produces a wholesale price."

9. The question whether cause exists for a four (4) year payment period is not at issue at this time. See 11 U.S.C. § 1322(c).

10. M.S.A. § 27A.6013; M.C.L.A. § 600.6013.

11. This conclusion is based in part on application of techniques utilized in the post-Code cases in this area. See, e. g., *In re Ziegler*,

supra, and *In re Lum*, supra. While methods of the sort utilized in these cases have the attractive feature of assuring a predictable result, they do not seem sufficiently related to the objective of providing collateral value to the creditor as to warrant adoption at this time. Until such a method emerges, a case by case evaluation seems necessary.

12. "The controlling concept is one of fundamental fair play." *In the Matter of American Kitchen Foods, Inc.*, supra.