In re Walter D. DAVIS, Jr., Debtor.

Bankruptcy Nos. 180–00001, C181–0039.

United States Bankruptcy Court,
D. Maine.

Sept. 28, 1981.

George W. Kurr, Logan & Kurr, Bangor, Maine, Gerald D. Rosen, Boston, Mass., for debtor.

W. Scott Carlisle, Cope, Cope & Carlisle, Portland, Maine, for Creditors' Committee.

Thomas M. Brown, Eaton, Peabody, Bradford & Veague, Bangor, Maine, for Houlton Trust.

## MEMORANDUM OPINION

CONRAD K. CYR, Bankruptcy Judge.

Houlton Trust Company [HTC] seeks a determination as to the value of its security interest in various vehicles[1] retained by the debtor in possession [debtor] for use in its continuing operations.[2] The debtor continued to make payments to HTC after the commencement of these chapter 11 proceedings, until the creditors' committee objected on the ground that the payments included postpetition interest. The objection is predicated on Bankruptcy Code § 506(b),[3] which permits postpetition interest only if the value of the collateral exceeds the amount of the claim.

The HTC claim is an allowed secured claim to the extent of the value of the HTC interest in the debtor's interest in these vehicles, by virtue of Bankruptcy Code § 506(a),[4] which directs the court to consider the purpose of the valuation and the proposed use or disposition of the property, but prescribes no other statutory valuation standards.

The purpose of the present valuation is to arrive at a dollar equivalent of the economic worth of the "interest" of HTC in the estate's interest in the vehicles, in order to assure adequate protection of HTC's interest in accordance with Bankruptcy Code § 363(e).[5] The "interest" to be protected is the net economic benefit recoverable by HTC upon a post-default disposition of its collateral pursuant to the provisions of its contract and of applicable law.

HTC takes the position that each collateral unit is worth more than the amount due against it.[6] The court must therefore ascribe to each unit of collateral the dollar equivalent of its economic worth.

The confirmed reorganization plan contemplates that the collateral be used by the debtor in its ongoing wholesale food distribution business. In these circumstances, subsection 506(a) seems to envision an archetypical valuation premised on a simulat-

---

1. See note 6 infra.

2. The confirmed reorganization plan contemplates retention of these vehicles for use in the business.

3. See note 12 infra.

4. Bankruptcy Code § 506(a) provides:

   § 506. Determination of secured status.
   (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
   Bankruptcy Code § 506(a), 11 U.S.C. § 506(a).

5. Bankruptcy Code § 363(e) provides:

   (e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. In any hearing under this section, the trustee has the burden of proof on the issue of adequate protection.
   Bankruptcy Code § 363(e), 11 U.S.C. § 363(e).

6. HTC is the holder of perfected security interests as follows:

   1) One 1974 Great Dane trailer and Thermo King refrigerator unit, securing a claim of $8,052.62;
   2) Two 1974 Freuhauf trailers with Thermo King refrigerator units, securing a claim of $14,169.01;
   3) A 1974 International truck and 1972 Strick trailer, securing a claim of $12,725.87;
   4) A GMC truck, securing a claim of $7,531.50.

ed conversion of the collateral into cash in the most commercially reasonable manner practicable in the circumstances. *See* H.Rep.No.95–595, 95th Cong., 1st Sess. (1977), at 356; S.Rep.No.95–989, 95th Cong., 2d Sess. (1978), at 68, U.S.Code Cong. & Admin.News 1978, 5787. *Cf. In re Jones*, 5 B.R. 736, 6 B.C.D. 965, 967 (E.D.Va.B.J. 1980) [chapter 13]; *In re Savloff*, 4 B.R. 285, 6 B.C.D. 349, 350 (E.D.Pa.B.J.1980) [chapter 7]; *In re American Kitchen Foods, Inc.*, 2 B.C.D. 715, 722 (D.Me.B.J.1976) [Chapter XI collateral valuation].

■ Where a confirmed chapter 11 reorganization plan contemplates retention of the collateral by the debtor for use in its ongoing business operations, collateral of the type involved in this case should be ascribed its fair market value. The present record contains uncontroverted evidence that the net recovery from a private sale conducted on reasonable [60-day] notice, after deducting all reasonable costs of sale, would exceed the amount due HTC on each item of collateral, with the exception of the 1972 GMC truck.[7]

■ HTC contends that its collateral could command a premium at either public or private sale,[8] due to its ability as a lender to offer purchase-money funding to prospective buyers. The fundamental assumption underlying any commercially reasonable collateral disposition must be that it would proceed as an arms-length transaction, whose putative traits [e. g. whether a forced, liquidation or going-concern sale] will have been prescribed by the court in accordance with the broad legislative guidelines contained in Bankruptcy Code § 506(a). Were it assumed instead that the putative purchaser would pay more (or less) than the collateral is worth, for whatever reason, the sale could not be considered an arms-length transaction. It cannot be presumed that a reasonable seller would dispose of its collateral, in whatever marketplace, for less than the market would bear. *Cf. In re Pennyrich International Inc. of Dallas*, 473 F.2d 417 (5th Cir. 1973) [prudent-man test]. As in any arms-length commercial transaction, it must be presumed that the seller, in disposing of the collateral, has endeavored, by all reasonable means practicable in the circumstances, to realize its full economic worth. Nor will it be presumed that the seller would willingly part with other value, such as purchase-money financing, for less than its actual worth, in order to sell the collateral at a premium. The legerdemain of labeling as part of the sale price what is in reality a portion of the financing cost, may disguise, but cannot alter, the true market value of the collateral.

The net fair market values of the estate's interest in each unit of collateral, for the expert testified as to the following liquidation and net fair market values:

|  |  | Net F.M.V. | Liquidation | Debt at Chapter 11 Filing Date |
|---|---|---|---|---|
| 1974 | Great Dane trailer and Thermo King refrigerator unit | $ 9,000 | $ 6,750 | $ 8,052.62 |
| 1974 | Freuhauf trailers (2) with Thermo King refrigerator units | 18,000 | 13,500 | 14,169.01 |
| 1974 | International truck and 1972 Strick trailer | 16,000 | 12,000 | 12,725.87 |
| 1972 | GMC truck | 7,500 | 5,625 | 7,531.50 |

---

7. The parties have stipulated the amounts due at the date of the chapter 11 petition, and an

8. On the basis of the present record there is no evidence that these used units are the "subject of widely distributed standard price quotations...." *See* Me.Rev.Stat.Ann. tit. 11, § 9–504(3). Nor is there evidence that the collateral is of a type customarily sold in a recognized market. *Id.* Therefore, although the collateral may be sold at either private or public sale, HTC may not purchase at private sale. *Id.*

purposes of the present controversy,[9] are found to be as follows:

| | | Net F.M.V. |
|---|---|---|
| 1974 | Great Dane trailer and Thermo King refrigerator unit | $ 9,000 |
| 1974 | Freuhauf trailers (2) with Thermo King refrigerator units | 18,000 |
| 1974 | International truck and 1972 Strick trailer | 16,000 |
| 1972 | GMC truck | 7,500 |

The ultimate determination contemplated by Bankruptcy Code § 506(a) & (b) requires an evaluation of the secured party's interest in the estate's interest in the collateral. Upon disposition of the collateral following default, the secured party must account to the debtor for any surplus net proceeds over and above the secured indebtedness. Me.Rev.Stat.Ann. tit. 11, §§ 9–502(2)[10] & 9–504(2)[11] (1980–81 Supp.). In the words of subsection 506(a), the secured party must be provided adequate protection of its "interest in the estate's interest in such property." The "interest" of the secured party entitled to protection is therefore limited under the Uniform Commercial Code by the requirement of an accounting to the debtor. There is no entitlement in these circumstances to adequate protection of the so-called collateral "cushion" of the secured party, except as may be mandated by Bankruptcy Code § 506(b).[12]

The Uniform Commercial Code entitles the debtor to redeem[13] or purchase[14] collateral after default. These rights must be taken into account in any attempt to evaluate the economic worth of the *interest of the secured party* in the estate's interest in the collateral, along with the right to an accounting for any surplus.[15] In the present case, the value of the secured party's interest in the estate's interest in the collateral would stand undiminished by the exercise of the debtor's right of redemption or right to purchase (offer or bid). Under the Uniform Commercial Code the debtor cannot redeem the collateral without at least satisfying the secured party claim, including postpetition interest.[16] Nor is there any discernible legal or economic basis for supposing that the debtor could acquire by purchase collateral worth at least as much as the amount of the allowed secured claim (including postpetition interest) for

9. *See* S.Rep.No.95–989, 95th Cong., 2d Sess. (1978), at 68; 124 Cong.Rec.H.11095 (daily ed. Sept. 28, 1978) (remarks of Rep. Don Edwards); 124 Cong.Rec.S.17411 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini).

10. 11 M.R.S.A. § 9–502(2) provides:
(2) A secured party who by agreement is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the debtor and who undertakes to collect from the account debtors or obligors must proceed in a commercially reasonable manner, and may deduct his reasonable expenses of realization from the collections. If the security agreement secures an indebtedness, the secured party must account to the debtor for any surplus, and unless otherwise agreed, the debtor is liable for any deficiency. But, if the underlying transaction was a sale of accounts or chattel paper, the debtor is entitled to any surplus or is liable for any deficiency only if the security agreement so provides.

11. 11 M.R.S.A. § 9–504(2) provides:
(2) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and unless otherwise agreed, the debtor is liable for any deficiency. But, if the underlying transaction was a sale of accounts or chattel paper, the debtor is entitled to any surplus or is liable for any deficiency only if the security agreement so provides.

12. Bankruptcy Code § 506(b) provides:
(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.
Bankruptcy Code § 506(b), 11 U.S.C. § 506(b).
HTC asserts no claim under subsection 506(b), except for postpetition "interest on such claim."

13. Me.Rev.Stat.Ann. tit. 11, § 9–506.

14. *Id.* § 9–504(3).

15. *Id.* § 9–504(2).

16. *Id.* at § 9–504(1)(b).

less than the amount of the allowed secured claim. Finally, Bankruptcy Code § 506(b) plainly entitles HTC to recover postpetition interest in an amount not greater than the amount by which the value of the secured party's interest in the estate's interest in the collateral exceeds the amount of the underlying claim, the so-called collateral cushion.

 Upon submission of a stipulation as to the amount of the claim for postpetition interest asserted against each unit of collateral, except the 1972 GMC truck, an order is to enter fixing each allowed secured claim in an amount equal to the aggregate of such postpetition interest and the HTC claim at filing, which allowed secured claim may not exceed the net fair market value of the collateral unit against which it is asserted. The allowed secured claim asserted against the 1972 GMC truck is fixed in the amount of $7,500. The $31.50 balance constitutes an unsecured claim.