**In the Matter of QPL COMPONENTS, INC., Debtor.**

**GENERAL ELECTRIC CREDIT CORPORATION, Plaintiff,**

**v.**

**QPL COMPONENTS, INC., Defendant.**

**No. 882–80161–17.**
**Adv. No. 882–0060–17.**

United States Bankruptcy Court,
E. D. New York.

May 3, 1982.

and distributing various electrical components. *See* Debtor's petition.

Schwartz & Sachs, P. C. by Abel Jack Schwartz, Carle Place, N. Y., for debtor/defendant.

Munley, Meade, Burns & Nielsen, P. C. by James G. Meade, Great Neck, N. Y., Raff, Scheider & Wiener, P. C. by Roy E. Scheider, Newark, N. J., for creditor/plaintiff.

Jules V. Speciner, Great Neck, N. Y., for Trustee.

## DECISION & ORDER

BORIS RADOYEVICH, Bankruptcy Judge.

Upon complaint filed January 28, 1982 the plaintiff secured creditor, General Electric Credit Corporation seeks judgment lifting the automatic stay imposed by 11 U.S.C. § 362, and directing the debtor, QPL Components, Inc., to segregate and turn over to General Electric Credit Corporation all inventory and proceeds of inventory which was the subject property of a security agreement executed between the parties on April 28, 1980. By answer filed February 11, 1982 QPL Components, Inc. denies the plaintiff's allegations and asserts the nonexistence of grounds upon which this Court can grant the desired relief. The complaint having come on for trial March 9, 1982, and it appearing that the parties were not ready to proceed, this Court ordered the lifting of the automatic stay as required by 11 U.S.C. § 362(e), and set March 15, 1982 as the hearing date for determination of the issues of reimposition of the stay and the appropriateness of granting the plaintiff's request for a turnover order. At that time the parties submitted their proofs and decision was reserved. Upon the record this Court makes the following:

### Findings of Fact

1. The defendant, QPL Components Inc. (QPL), located at 1 Commac Loop, Ronkonkoma, New York, is a corporation organized and existing under the laws of the State of New York for the purpose of marketing and distributing various electrical components. *See* Debtor's petition.

2. The plaintiff, General Electric Credit Corp. (GECC), located at 1011 High Ridge Road, Stamford, Connecticut, is a corporation organized and existing under the laws of the State of New York for the purpose of financing the acquisition of electrical component inventories. *See* Plaintiff's complaint.

3. On April 28, 1980 the above-mentioned parties entered into a financing agreement, wherein GECC was given a purchase-money security interest in all inventory and proceeds of inventory acquired by QPL with GECC financing. *See* Plaintiff's complaint, Exhibit A.

4. In December of 1981 QPL defaulted on its loan obligations to GECC, causing acceleration of its entire indebtedness. *See* Plaintiff's complaint, ¶ 10.

5. On January 21, 1982 QPL filed a voluntary petition under Chapter 11 of the Bankruptcy Reform Act of 1978 with this Court.

6. On February 9, 1982 after notice and hearing held February 2, 1981 this Court signed an order granting GECC adequate protection. This order incorporated a stipulation reached between the parties, which provided that GECC would receive 75% of all proceeds derived from the sale of its collateral, and a § 507(b) priority for the 25% balance kept by QPL. Further assuring protection of GECC's secured interest was the appointment of John H. Munley as trustee.

7. As of the date of this proceeding, March 15, 1982, QPL was indebted to GECC pursuant to the April 28, 1980 agreement, in the sum of $800,000. Transcript of March 15, 1982 at 6 (hereafter Tr. at " ").

8. The value of QPL's inventory, in which GECC has a security interest is $750,000. Tr. at 28. *See also* Plaintiff's supplemental memo of law dated April 20, 1982.

9. The value of the accounts receivable derived from QPL's sale of the secured inventory is $180,000. Tr. at 10.

10. QPL's $800,000 debt to GECC is secured by collateral valued at $930,000. Accordingly, QPL has an equity of $130,000 in said collateral.

11. No intervening events have occurred to alter the rights of the parties since this Court's lifting of the automatic stay on March 9, 1982 pursuant to 11 U.S.C. § 362(e).

### Conclusions of Law

1. This Court holds the discretionary equitable power to reimpose a stay lifted pursuant to 11 U.S.C. § 362(e). *See* 11 U.S.C. § 105(a); Rule 65 of the Fed.R.Civ.P.; *In re Feimster*, 3 B.R. 11, 1 C.B.C.2d 956 (Bkrtcy.D.Ga.1979); *In re Stuart Motel, Inc.*, 15 B.R. 28, 5 C.B.C.2d 647 (Bkrtcy.D. Fla.1981); *In re Huntington Limited*, 654 F.2d 578, 590 (Ninth Cir. 1980).

2. Determining the value of collateral requires this Court to make an informed projection as to the amount recoverable upon conversion of the collateral into cash in a commercially reasonable manner. *In re American Kitchen Foods, Inc.*, 2 B.C.D. 715, (D.Ma.1976), 9 C.B.C. 537; *In re Davis*, 14 B.R. 226 (Bkrtcy.D.Me.1981); *In re Van Nort*, 9 B.R. 218 (Bkrtcy.E.D.Mich.1981).

3. The value to be accorded collateral which is inventory of an ongoing Chapter 11 debtor, with reasonable prospects that it can continue, is the dollar value realizable from its disposition in the ordinary course of business. *In re American Kitchens Foods Inc.*, 2 B.C.D. 715 (D.Ma.1976), 9 C.B.C. 537; *In re Shockley Forest Industries, Inc.*, 5 B.R. 160 (Bkrtcy.N.D.Ga.1980).

4. The nature of the Chapter 11 debtor's distribution operation should be considered in determining whether to value its inventory at the wholesale or retail standard. *See In re Anchorage Boat Sales, Inc.*, 4 B.R. 635 (Bkrtcy.E.D.N.Y.1980).

5. GECC has no right to the relief requested pursuant to 11 U.S.C. § 362(d).

6. QPL is entitled to injunctive relief in the form of reimposition of the stay upon the subject collateral. 11 U.S.C. § 105; Fed.R.Civ.P. # 65.

7. GECC is not entitled to its requested turnover order injunctive relief. 11 U.S.C. § 105; Fed.R.Civ.P. # 65.

### Memorandum

The threshold issue before this Court is whether QPL is entitled to the reimposition of the bankruptcy proceeding automatic stay which was lifted with respect to GECC's collateral by order signed March 19, 1982 pursuant to 11 U.S.C. § 362(e). GECC opposes reimposition of the stay asserting its entitlement to the already granted relief pursuant to 11 U.S.C. § 362(d). This section provides:

(d) On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

The cornerstone of both GECC's § 362(d) causes of action require a determination of the debtor's equity in the subject collateral. Equity is defined as the amount by which the value of the collateral exceeds the debt it secures. *In re American Kitchen Foods, Inc.*, 2 B.C.D. 715 (D.Ma.1976), 9 C.B.C. 537. As it is undisputed that QPL's indebtedness to GECC approximates $800,000, the determination of the debtor's equity, and the resolution of this litigation is dependent upon a factual finding as to the collateral's value.

Section 506(a) of the Code provides that the value of collateral shall be determined in light of the purpose of the disposition of the property. The statutory language offers less than specific guidance on the question of value. However Section 506(a)'s legislative history indicates that the concept of valuation is to be flexible. *In re*

*Jones,* 5 B.R. 736 (Bkrtcy.E.D.Va.1980). Therein it is explained that,

> "Value" does not necessarily contemplate forced sale or liquidation value of collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case.

H.Rep.No.95–595, 95th Cong., 1st Sess. 356 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6312; *See In re Savloff,* 2 B.C. D.2d 56 (Bkrtcy.E.D.Pa.1980), 4 B.R. 285, 287, 6 B.C.D. 349.

The judicial test for determining where along the above-mentioned spectrum to assess the collateral's value requires this Court to make an informed projection as to the amount recoverable upon conversion of the collateral into cash in a commercially reasonable manner. *In re American Kitchen Foods, Inc., cite supra; In re Davis,* 14 B.R. 226 (Bkrtcy.D.Me.1981); *In re Van Nort,* 9 B.R. 218 (Bkrtcy.E.D.Mich.1981). Commercial reasonableness is achieved by applying the norm that a prudent businessman would employ to dispose of an asset through established commercial channels in an effort to realize its full economic value. *In re Pennyrich Inc. of Dallas,* 473 F.2d 417 (5th Cir. 1973); *In re Savloff, cite supra; In re Davis, cite supra; In re Jones, cite supra.* Ordinarily commercial reasonableness is tested against the standard established in Section 9–504(3) of the Uniform Commercial Code. *In re American Kitchen Foods, Inc., cite supra; In re Jones, cite supra.* This standard considers reasonable the creditor's liquidation of the collateral via a non-distress arms-length sale on reasonable notice. Such a sale will recover the fair market value the collateral will bring if a willing buyer had to be found on approximately 60 days notice. *In re Davis, cite supra.*

■ However using the U.C.C. prescribed liquidation value has generally been found not to be commercially reasonable for inventory type collateral which is in the possession of an active Chapter 11 debtor. The case law indicates that,

> Where the collateral is used or produced under Chapter XI by a going business which offers reasonable prospects that it can continue, the value of the collateral is equatable with the net recovery realizable from its disposition as near as may be in the ordinary course of business.

*In re American Kitchen Foods Inc., cite supra; In re Shockley Forest Industries, Inc.,* 5 B.R. 160 (Bkrtcy.N.D.Ga.1980). In this situation, conversion of the collateral to cash as if it were being sold as part of a going concern, proceeding in the ordinary course of business, is the most commercially reasonable disposition simply because it is the most productive. *In re Xinde Intern., Inc.,* 13 B.R. 212 (Bkrtcy.D.Mass.1981), 7 B.C.D. 1204. *In re American Kitchen Foods Inc., cite supra.*

In the case at bar, QPL appraises the fair market value of the subject inventory at $1,045,000. In addition it is asserted that GECC is further secured by $250,000 of accounts receivable, representing proceeds of inventory already sold. All totalled, GECC's $800,000 debt is allegedly secured by $1,295,000. Accepting these figures would establish the debtor's equity at $495,-000 and would preclude relief under either provision of § 362(d). However, the debtor's valuation lacks credibility. Its case relies solely upon the testimony of Paul Wienstein, former president and a principal of QPL. This witness admits to having submitted fraudulent invoices, in reliance upon which GECC was induced to further advance $200,000. Tr. at 79–80. He bases his premium valuation of the inventory upon the existence of recertification documents which make said inventory marketable to the military. These certificates were never presented to GECC's appraiser, nor were they produced before this Court as required by subpoena. Tr. at 84. *See* Plaintiff's Exhibit XIX. QPL's valuations, based upon such questionable testimony, can not be accepted.

In contrast GECC has presented disinterested expert testimony that the inventory has a 60 day liquidation value of $300,000, a wholesale replacement value of $650,000,

and a retail fair market value of $750,000. GECC also disputes QPL's $250,000 accounts receivable figure and values them at $180,000 due to the uncollectable nature of many of the accounts.

■ QPL is an ongoing business. The collateral involved is principally inventory. Applying the law as discussed infra, the $300,000 liquidation value is clearly inappropriate. As QPL's distribution operation is set up on a retail rather than wholesale basis, the $750,000 retail standard is the most appropriate valuation.[1] *See In re Anchorage Boat Sales, Inc.*, 4 B.R. 635 (Bkrtcy. E.D.N.Y.1980). Adding the $180,000 of accounts receivable to this $750,000 worth of inventory gives the collateral a total sale value of $930,000.

■ Having established the debtor's equity at $130,000, and noting the adequate assurance order signed February 9, 1982, wherein GECC receives 75% of all accounts receivable derived from sale of the collateral, and an 11 U.S.C. § 507(b) priority for the balance, it is readily apparent that GECC would not have been entitled to relief under § 362(d). As no intervening events have occurred to alter the rights of the parties since the lifting of the stay, this Court invokes its equitable powers to reimpose the stay pursuant to 11 U.S.C. § 105(a), and Rule 65 of the Fed.R.Civ.P. *See In re Feimster*, 3 B.R. 11, 1 C.B.C.2d 956 (Bkrtcy.D.Ga.1979); *In re Stuart Motel, Inc.*, 15 B.R. 28, 5 C.B.C.2d 647 (Bkrtcy.D. Fla.1981); *In re Huntington Limited*, 654 F.2d 578, 590 (Ninth Cir. 1980). Accordingly, GECC's request for a turnover order is inappropriate and is denied.

Settle judgment in accordance herewith.

---

1. This Court notes GECC's supplemental memorandum of law dated April 20, 1982. This memo, in addressing the issue of valuation, asserts GECC's position that $700,000 is the inventory's most reasonable value. Even using this figure, QPL still has considerable equity in the subject collateral.