In re GOODWIN'S DISCOUNT FURNITURE, INC., Debtor.

NORWAY NATIONAL BANK, Plaintiff,

v.

GOODWIN'S DISCOUNT FURNITURE, INC., Defendant.

United States Small Business Administration, Party-in-Interest,

Roderick Rovzar, Trustee, Defendant.

Bankruptcy No. 281–00001.
Adv. No. 281–0170.

United States Bankruptcy Court,
D. Maine.

Jan. 12, 1982.

Thomas G. Leahy, Monaghan & Leahy, Portland, Me., for plaintiff.

David C. Hillman, Verrill & Dana, Portland, Me., for Goodwin's Discount Furniture, Inc.

Harlan Choate, Augusta, Me., for Small Business Administration.

Roderick R. Rovzar, Trustee, Norman & Hanson, Portland, Me., pro se.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

In this proceeding Norway National Bank seeks relief from the automatic stay of Section 362(a) of the Bankruptcy Code. [11 U.S.C. § 362(a) ].[1]

The Debtor, Goodwin's Discount Furniture, Inc., filed its original petition seeking relief under Chapter 11 of the Code on January 5, 1981. Despite heroic efforts, it has been unable to propose a successful plan of reorganization. On September 18th the case was converted from Chapter 11 to Chapter 7.

The Court concludes that the Plaintiff is entitled to relief from the automatic stay.

A review of the docket of this unsuccessful Chapter 11 case is necessary to set the stage for this proceeding.

On January 5, 1981, together with its original petition, the Debtor filed a motion seeking authorization to use cash collateral. On the same date, upon telephonic notice to those entities claiming an interest in cash collateral, the Court conducted a preliminary hearing as authorized by Section 363(c)(3). At that hearing the Court found that there was a reasonable likelihood that the Debtor would prevail at the final hearing under Section 363(e) and temporarily authorized the use of cash collateral until January 15, 1981, the date set for a final hearing. On January 15th a hearing was held and on January 16, 1981 the Court entered a consent order authorizing the use of cash collateral.

The Debtor continued to operate its business throughout the winter months but continued to sustain losses.

On June 5, 1981 the Debtor filed an application with this Court seeking authority to conduct a "cash emergency sale" in an effort to generate cash and turn its business around. Objections to the application were filed by the Bank, Small Business Administration and the U.S. Trustee.

On June 24, 1981 a hearing was had on the Debtor's motion for authority to conduct the proposed "cash emergency sale" and on June 26, 1981 the Court issued its order authorizing the continued use of cash collateral and authorizing the conduct of the sale.

On June 26, 1981, the Court found that the proper method of valuation of the Debtor's assets was a "going-concern value." At that time the Court was able to find that there was a reasonable prospect of an effective reorganization of the Debtor. Based upon this "going concern value," the personal guaranties of Mr. and Mrs. Goodwin[2] and other safeguards contained in the Court's order, the Court found that the secured creditors were adequately protected within the meaning and intent of Section 361 of the Code. 2 Collier ¶ 361.02 (15th Ed. 1980); *In re American Kitchen Foods*, 9 C.B.C. 537 (Bkrtcy.D.Me.1976).

Pursuant to the Court's order the "cash emergency sale" was conducted, which unfortunately, was unsuccessful.

At the request of the Plaintiff a hearing was scheduled on its motion to convert the case to a Chapter 7. The hearing was scheduled for July 9, 1981, and was continued with the consent of the parties because of ongoing negotiations between the Debtor, the Bank, and SBA.

On September 9, 1981 the motion to convert was again scheduled for hearing and

---

1. A counterclaim filed by the Debtor will be scheduled for hearing at a later date. H.R. 95.595, 95th Cong. 1st Sess. 344 (1977) S. 95–989, 95th Cong. 2nd Sess. 53–55 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787.

2. The guaranties were secured by a mortgage on Mr. and Mrs. Goodwin's residence.

again was finally continued to September 18, 1981 at the request of the Debtor.

On September 11th this adversary proceeding was filed.

On September 18, 1981 a voluntary conversion to Chapter 7 was filed by the Debtor and a Trustee was appointed.

On October 1, 1981 a hearing was held on the Bank's complaint.

Based upon testimony presented at the hearing and exhibits in the Court's file the Court makes the following findings of fact:

1. On October 1, 1981 the Debtor was indebted to the Bank and SBA in the following amounts:

| | | |
|---|---|---|
| (a) | Bank loan dated 12/9/77 | $ 43,439.74 |
| (b) | Bank loan dated 5/30/80 | 51,080.91 |
| (c) | SBA loan dated 8/28/79 | 181,385.23 |
| (d) | Bank loan dated 9/13/79 | 5,558.69 |
| | TOTAL | $281,464.57 |

2. Interest is accumulating on said loans in the amount of $117.73 per day.

3. The SBA loan is secured by a first mortgage on land and buildings owned by the Debtor and a second security interest in inventory, accounts receivable, contract rights, machinery and equipment (excluding motor vehicles), furniture, fixtures and proceeds. SBA also holds the personal guaranties of Clifford and Barbara Goodwin, which guaranties are secured by a pledge of shares of stock of the Debtor corporation.

4. The Bank's loans are secured by a first security interest in inventory, furniture, fixtures, accounts receivable, a 1979 Ford Van, a 1979 GMC Van, proceeds and a second mortgage on the land and buildings owned by the Debtor. The Bank also holds the personal guaranty of Clifford Goodwin which is secured by second and third mortgages on the personal residence of Clifford L. Goodwin and Barbara J. Goodwin.

5. Since the filing of the Debtor's Chapter 11 petition the following amounts of interest, costs and fees have accrued as of October 1, 1981:

3. The Bank presented evidence that the account contained $32,163.64; Mr. Goodwin

| | | |
|---|---|---|
| (a) | interest of approximately | $27,822.22 |
| (b) | attorneys' fees and disbursements of approximately | $10,301.50 |
| (c) | accountant's fees and disbursements of approximately | $ 3,779.00 |
| (d) | maintenance of its collateral | $ 76.26 |
| (e) | appraiser's fee | $ 200.00 |

6. There remains in excess of $32,000 in a checking account with the bank.[3] This amount represents primarily the proceeds of the "cash emergency sale" authorized by this Court. The Bank claims this account as proceeds from the sale of inventory. The Trustee also asserts a claim to the account.

7. The value of the Debtor's real estate, which is based upon the Court's determination of the net proceeds that could be realized from a commercially reasonable sale, is $150,000.

8. The values of the other assets of the Debtor, again based upon the net proceeds that could be realized from commercially reasonable sales, are as follows:

| | | |
|---|---|---|
| (a) | 1979 Ford Van | $3,500.00 |
| (b) | 1979 GMC Van | $4,500.00 |
| (c) | office furnishings and equipment | $1,125.00 |
| (d) | inventory | $14,000.00 |

9. Real estate taxes on the Debtor's property for 1980 and 1981, which total in excess of $4,000, have not been paid.

10. Legal fees of $10,301.50 and accountant's fees of $3,779.00 claimed by the Bank are reasonable and necessary. They were incurred by the Bank during the administration of the Debtor's Chapter 11 case.

11. From the foregoing it is obvious that the Debtor does not have an equity in the following property, which is the property subject to the Bank's complaint for relief from stay:

(a) real estate

(b) inventory

(c) 1979 Ford Van

(d) office furnishings and equipment

(e) 1979 GMC Van

testified that it contained $32,293.04.

## DISCUSSION

■ The Debtor argues for a going concern valuation of its assets. This might be appropriate in the initial stages of a reorganization case. In fact, this was the method of valuation used by this Court prior to conversion to Chapter 7.

We are now faced with liquidation. The Debtor is no longer conducting business and there is no longer a prospect of reorganization.

The Debtor's qualified appraiser, Mr. Solari, placed a fair market value of $200,000 on the Debtor's real estate and a liquidation value of $135,000 to $150,000. He testified that it would require a minimum of six months to a year, the services of a real estate broker and extensive advertising to recover this amount for the property. The testimony and written appraisal of Mr. Childs, who appraised the real estate for the Bank did not differ substantially from Mr. Solari's valuations, except that he placed a fair market value of $202,000 to $208,000 on the property. Mr. Solari testified that a broker would charge a commission of 8% to 10% for a sale of the Debtor's real estate.

We now must face reality. This case is at the liquidation stage. Interest is accruing at $117.73 per day ($21,191.40 for six months). There are unpaid taxes in excess of $4,000 which continue to accrue. Further legal and other expenses are inevitable. Broker's commissions of approximately $20,000 must be anticipated. The Court must and does find that the value of the Debtor's real estate, in view of the circumstances of the case, is $150,000.

The real estate is subject to valid and perfected mortgages securing SBA's claim of $181,385 and the Bank's claim of at least $51,080.91. It is obvious that the Debtor has no equity in the real estate.

The Debtor's inventory, at this liquidation stage of the case, can not realistically be valued at going concern value. The Court is aware that this inventory is the remains of the Debtor's inventory which was involved in Debtor's "cash emergency sale." Mr. Keenan, an experienced and expert auctioneer, who testified for the Bank,

characterized it as "the tail end of things." Mr. Keenan appraised the inventory at $14,-000, a figure accepted by the Court. The Debtor testified that Peter Borza had offered 70% of invoice less an allowance for damaged goods. This purported "offer" contains so many conditions that the Court can not consider it.

The Court values the Debtor's inventory at $14,000. It is subject to a valid and perfected first and third security interest held by the Bank and a second valid and perfected security interest held by SBA. In view of the large deficiency which exists in Debtor's real estate it is obvious that the Debtor has no equity in inventory.

The 1979 Ford Van, valued by the Court at $3,500, is subject to a valid and perfected security interest held by the Bank as additional security for a loan dated May 30, 1980 with a balance, as of October 1, 1981, of $51,080.91. This loan is also secured by a second mortgage on Debtor's real estate, a third position in inventory, furniture and fixtures, and is clearly under secured. Therefore, the Debtor has no equity in the 1979 Ford Van.

The same is true for the Debtor's office furnishings and equipment. The Debtor clearly has no equity in those items.

The Debtor's 1979 GMC Van is valued at $4,500 and is subject to the Bank's claim in the amount of $5,558.69, secured by a valid and perfected security interest. The Debtor has no equity in the 1979 GMC Van.

The Debtor's bank account with the Plaintiff Bank in excess of $32,000 is claimed by both SBA and the Bank as part of their security. The Debtor and the Trustee also assert a claim to this account. Even if the Court should ultimately find that the Bank and SBA are entitled to the funds, their claims would remain under secured. For the purpose of this decision the Court finds that the Debtor has no equity in the bank account.

None of the cases cited by the Debtor on the issue of valuation support its position. *In re American Kitchen Foods*, 9 C.B.C. 537 (Bkrtcy.D.Me.1976), involved a debtor-in-possession with excellent prospects for a successful reorganization. *In re Davis*, 14

B.R. 226; ¶ 68–404 CCH Bankr.Rep. 79,916; 5 C.B.C.2d 381 (Bkrtcy.D.Me.1981), concerned a Debtor with a confirmed reorganization plan and the issue was a Section 506(a) valuation of a creditor's secured claim for the purpose of determining whether or not the creditor was entitled to post-petition interest and costs under Section 506(b). *In re Savloff*, 4 B.R. 285, 6 B.C.D. 349 (Bkrtcy.E.D.Pa.1980) involved a scheme by Chapter 7 Debtors to obtain a low valuation for their residence in order to "determine whether they want to repurchase the property..." *In re Alyucan*, 12 B.R. 803, 7 B.C.D. 1123 (Bkrtcy.D.Utah 1981), cited by the Debtor, also involves a Chapter 11 debtor-in-possession. Interestingly, the Debtor seems to overlook Judge Mabey's discussion of Section 362(d)(2) found on page 1128 n. 17 of the decision. This court, frankly, doesn't understand Judge Holmes' reasoning in *In re Antilles Yachting, Inc.*, 4 B.R. 470, 6 B.C.D. 616 (Bkrtcy.D.V.I.1980) cited by the Debtor. It is significant, however, that in that case the Court found that:

> Part of the valuation problems in appraising a plan are eliminated here because Debtor and Citibank both agree that Debtor's property would bring more than enough at a judicial sale to satisfy in full Citibank's claim, plus interest. *In re Antilles Yachting, Inc., supra*, 4 B.R. 470, 6 B.C.D. at p. 617.

Section 362(d)(2) controls the outcome of this proceeding. That subsection mandates relief from the stay if the debtor does not have an equity in property. The Court has no discretion. 124 Cong.Rec.H. 11,092–3 (9/28/78); S 17,409 (10/6/78); *Anchorage Boat Sales, Inc.*, 4 B.R. 635, 6 B.C.D. 495 (Bkrtcy.E.D.N.Y.1980).

Section 362 provides, as pertinent:

(d) on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay.

.    .    .    .    .

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

The Court, having found that the Debtor does not have an equity in the property and that the property is not necessary to an effective reorganization, must grant relief from the stay. *See In re Anchorage Boat Sales, Inc., supra; In re Ruark*, 7 B.R. 46 (Bkrtcy.D.Conn.1980); *In re Thomas Parker Enterprises, Inc.*, 10 B.R. 783 (Bkrtcy.D. Conn.1981); *In re Gardner*, 14 B.R. 455 (Bkrtcy.E.D.Va.1981).

Debtor's arguments regarding adequate protection are not relevant. Adequate protection does not become an issue unless the Court finds that the Debtor has an equity in the property, or that the property is necessary to an effective reorganization.

An appropriate order has been entered.